**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **ELIZABETH E. FRASIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:25-cv-00396-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Frank Bisignano,* | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Elizabeth E. Frazier appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). Having now considered the parties' arguments and the evidence of record, the Commissioner's decision will be reversed and the case remanded for further proceedings in accordance with this Opinion and Order.

## I. FACTUAL AND PROCEDURAL HISTORY

Frasier applied for DIB in May 2021, alleging disability as of November 23, 1981. (ECF 11 Administrative Record ("AR") at 699, 175-76).[1] Frasier's claim was denied initially and upon reconsideration. (AR 86, 95). After an administrative hearing, administrative law judge ("ALJ") Kathleen Winters issued a decision on September 16, 2022, finding that Frasier was not disabled because she could perform a significant number of light-exertional jobs in the national economy

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

despite the limitations caused by her impairments. (AR 24-38). The Appeals Council denied Frasier's request for review (AR 9-11), and on March 27, 2023, Frasier filed a civil action with this Court (AR 762). On March 27, 2024, the Court reversed the Commissioner's final decision and remanded the case for further proceedings. (AR 761-79).

However, on March 17, 2023, prior to the remand, Frasier filed new DIB and Supplemental Security Income (SSI) applications. (AR 783). Consequently, on remand, the Appeals Council ordered the new applications be consolidated with the remanded application into one claim. (*Id.*). On February 19, 2025, ALJ Meredith Jacques conducted another administrative hearing, at which Frasier, who was represented by counsel, and a vocational expert (VE) testified. (AR 726-60). On March 17, 2025, ALJ Jacques issued Frasier another unfavorable decision, finding that she was not disabled because she could perform a significant number of light-exertional jobs, as well as sedentary jobs, in the national economy despite the limitations caused by her impairments. (AR 699-715). Because the case was previously remanded, this was the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On July 15, 2025, Frasier filed a complaint with this Court appealing the Commissioner's decision. (ECF 1). Frasier argues in this appeal that the ALJ erred by: (1) failing to build a logical bridge from the evidence to her conclusion; and (2) failing to include all supported limitations in the mental residual functional capacity (RFC). (ECF 21 at 6).

On the date of the Commissioner's final decision, Frasier was forty-three years old (AR 175), had a tenth-grade education (AR 199), and had past relevant work experience as a packer (AR 712, 751). In her opening brief, Frasier alleges disability based on the following conditions: Legg-Perthes disease[2]; severe osteoarthritis of the hip; severe chronic deformity of the femoral

---

[2] Perthes Disease, or Legg-Calve-Perthes Disease, "is a rare condition that affects children's hips. It starts when the top of the thigh bone (femur) temporarily loses its blood supply [and] … starts to die and break down.… [A]fter

head; carpal tunnel syndrome; attention deficit/hyperactivity disorder (ADHD), combined presentation; depressive disorder; generalized anxiety disorder; asthma; congestive heart failure; and dysuria. (ECF 21 at 5-6).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

---

blood flow is restored, it will start to regrow." Perthes Disease, https://my.clevelandclinic.org/health/diseases/legg-calve-perthes-disease (last visited May 1, 2026).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and

4

internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

## B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Frasier was insured for DIB through June 30, 2025. (AR 702). At step one of the five-step sequential analysis, the ALJ found that Frasier had engaged in substantial gainful activity during the following periods: 1999 to 2001, 2007 to 2010, 2015 to 2017, and 2019 to the third quarter of 2020. (*Id.*). As such, the ALJ stated that Frasier was not eligible for disability benefits during those years, and that her earliest potential onset date was October 1, 2020. (*Id.*). At step two, the ALJ found that Frasier had the following severe impairments: deformity of the left femoral head consistent with Legg-Calve-Perthes disease, osteoarthritis of the bilateral hips, degenerative disc disease of the cervical and thoracic spine, asthma, obesity, attention deficit hyperactivity disorder (ADHD), depression, and anxiety. (*Id.*).

At step three, the ALJ concluded that Frasier did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 703). The ALJ assigned Frasier the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The claimant can stand and walk for 4 hours total in an 8-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs; frequently balance … ; occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to dusts, odors, fumes, and pulmonary irritants …. She should avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. The claimant can understand, remember, and carry out simple instructions and tasks.

(AR 705-06).

The ALJ determined at step four that given the foregoing RFC, Frasier was incapable of performing her past relevant work as a packer. (AR 712). At step five, the ALJ found that a hypothetical individual of Frasier's age, education, experience, and RFC could perform a significant number of light-exertional jobs in the national economy, including cashier II – parking lot/cafeteria, marker, and routing clerk. (AR 713). The ALJ further found that even if such an individual were additionally limited to sedentary work, she could perform the sedentary jobs of ticket counter, document preparer, and information clerk. (*Id.*). Accordingly, Frasier's applications for DIB and SSI were denied. (*Id.*).

*C. January 2025 X-Ray and February 2025 Surgical Opinion*

Frasier argues that the ALJ failed to build an accurate and logical bridge from various evidence of record to the assigned RFC, including a January 2025 X-ray of her left hip and a February 2025 surgical consultation by Christopher N. Johnson, D.O. (ECF 21 at 8-17; *see* AR 3485-86, 3489, 3498).[3] Frasier contends the ALJ erred by relying on medical source opinions pre-dating this recent evidence. (ECF 21 at 13-14).

    1.  <u>X-ray Evidence</u>

In March 2022, an X-ray of Frasier's left hip showed "[c]hronic deformity in the left femoral head … likely related to the reported history of Legg-Calve Perthes …. No evidence of an acute osseous abnormality." (AR 2977; *see* AR 708). Almost three years later, on January 29, 2025, an X-ray of her left hip revealed a "[d]eformity involving the left acetabulum and left

---

[3] Frasier also challenges the ALJ's consideration of an August 2023 examining opinion of Dawn Fox, a nurse practitioner (AR 3430-38)[3]; the December 2023 and June 2024 reviewing opinions of J.V. Corcoran, M.D., and J. Sands, M.D., respectively (AR 824-825, 832-33); Frasier's use of a cane; and her obesity (AR 643, 3485) with congestive heart failure (AR 3436). (*See* ECF 21 at 11-17).

6

femoral head with flattening and *severe degenerative change* involving the left hip joint, consistent with patient's known Legg-Calve-Perthes disease." (AR 3489 (emphasis added)).

2.  Dr. Johnson's Surgical Consultation

On February 14, 2025, Frasier saw Dr. Johnson of Ortho Northeast for "severe left-sided hip pain" that radiating down her thigh. (AR 3499). Dr. Johnson noted that recent X-rays showed "grade 4 osteoarthritis with varus deformity [of] the proximal femur and shallow acetabular consistent with developmental dysplasia of the hip." (*Id.*).[4] A physical exam demonstrated "diminished" and "painful" range of motion, antalgic gait, and "a positive Stinchfield test consistent with intra-articular hip pain." (*Id.*). Dr. Johnson noted that Frasier had "failed conservative treatments" and recommended she undergo a left total hip replacement. (*Id.*). Frasier agreed to undergo the procedure, and the surgery scheduling and medical clearance process commenced. (*Id.*). Frasier was issued a prescription for a cane, walker, shower chair, and raised toilet set in preparation for the surgery. (AR 3501).

The administrative hearing took place on February 19, 2025, just five days after Frasier's surgical consultation with Dr. Johnson. (AR 726). At the hearing, Frasier's attorney told the ALJ that he had just learned that Frasier had received recent treatment and would submit the records immediately after the hearing. (AR 732). Dr. Johnson's February 14, 2025, consultative note was later submitted to the record. (AR 3497-507).

3.  The ALJ's Discussion of the 2025 X-rays and Dr. Johnson's Surgical Consult

In her decision, the ALJ discussed the 2025 X-ray results and Dr. Johnson's surgical opinion, stating:

---

[4] Grade 4 osteoarthritis is "the most severe stage" where the "cartilage is almost gone, which causes chronic inflammation" and "[p]ain and stiffness are felt almost all of the time."
https://www.hopkinsmedicine.org/health/conditions-and-diseases/hip-arthritis (last visited Apr. 22, 2026).

> The record contains a gap in the treatment records pertaining to [Frasier's] left hip until the claimant, in February 2025, presented for continued left-sided hip pain, which radiated down her left thigh, with reports of worsening following a fall. Notably, attempts to obtain records from Cameron Orthopedics indicates the claimant had no treatment until February 2025 (Exhibit 31F). Radiographs were noted to demonstrate grade 4 osteoarthritis with varus deformity of the proximal femur and shallow acetabular consistent with developmental dysplasia of the hip. On physical examination, she had diminished and painful range of motion. She was noted to have failed conservative treatment, but there is no evidence she received injections during the relevant time period and there are notations of prior non-compliance with treatment. The implications of a total left hip arthroplasty were discussed with the claimant (Exhibit 37F, 3). She underwent preparations for the surgery, and as part of this, was noted to receive a DME order which included a cane/walker for post surgery use.

(AR 708-09).

The ALJ further noted Dr. Johnson's surgical opinion when reviewing the medical source opinions of record. On that front, the ALJ found the 2023/2024 reviewing state agency physicians' opinions "more persuasive" than their 2021 counterparts. (AR 710). In December 2023 and June 2024, Dr. Corcoran and Dr. Sands, respectively, reviewed Frasier's record and limited her to a reduced range of light-exertional work involving four hours standing or walking; six hours sitting; frequent balancing, stooping, kneeling, crouching, and crawling; and occasional climbing of ramps and stairs, but never ladders, ropes, or scaffolds. (AR 710, 818, 824, 833, 841). In weighing the 2021 and 2023/2024 state agency physicians' opinions, the ALJ stated:

> [B]oth consultants are acceptable medical sources with program knowledge, which personally reviewed the claimant's medical evidence. However, the 2021 application consultants did not have the opportunity to review the claimant's medical evidence in its entirety. Additionally, review of her subsequent applications demonstrated supportive explanations of limitations, which are consistent with the totality of the claimant's medical evidence of record, including treating provider notations and physical examination. *Based on the claimant's more recent medical evidence, presented at hearing level, the claimant continued to have pain, stiffness, and reduced range of motion in the left hip noted for the last four years. There has been no evidence of worsening pain or reduction in range of motion. There was some discussion of potential surgical intervention, which is consistent with more restrictive limitations than noted initially, especially*

*when considering her prior treatment has been routine and conservative* (Exhibits 35F; 37).

(AR 710 (emphasis added)).

The ALJ also noted Dr. Johnson's surgical recommendation when finding "persuasive" the examining opinions of David Ilo, M.D., and Dawn Fox, N.P. (AR 711-12). Dr. Ilo opined in September 2021 that Frasier had "mild" limitations in walking and squatting with no need of an assistive device. (AR 412-24, 711). Similarly, NP Fox indicated in August 2023 that Frasier had "mild" limitations with standing and walking, and "moderate" limitations in squatting due to pain in her back and left hip and leg. (AR 711, 3430-38). In doing so, the ALJ explained:

> [Dr. Ilo's and NP Fox's] limitations were largely supportive of and consistent with the totality of the claimant's medical evidence. However, these are one-time examinations, and no treating relationship was established. The examiners used "mild" and "moderate" to describe limitations which are vague and vocationally undefined, but also indicate that no severe limits were indicated. The respective examinations are supportive of these findings, with both exams showing full, 5/5 strength, slight limp, and no assistive device, which was consistent with her longitudinal history and improved cardiac status. *The mild to moderate findings are also consistent with the treatment records showing she had only conservative treatment and gaps in the treatment records until 2025, when total hip replacement was recommended. Regardless, even when she showed up for that exam in 2025, the records noted an antalgic gait without use of an assistive device.* These findings are also consistent with each other, despite nearly 2 years between the exams and very limited treatment. She also reported walking around her subdivision and working in weeds, both of which are consistent with the mild to moderate limits (Exhibits 17F, 25F/3).

(AR 712).

4.  Analysis

Frasier argues that the ALJ erred by relying on medical source opinions who were unaware of her 2025 X-ray revealing severe degenerative changes to her left hip joint and Dr. Johnson's recommendation she undergo a left total hip replacement. (ECF 21 at 13-14). The Court agrees.

9

"Dr. [Johnson's] evaluation contained significant, new, and potentially decisive findings—the need for a hip replacement and evidence of further [hip joint] degeneration." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). "[This evidence] could reasonably change the reviewing physician[s'] opinion[s]." *Id.* "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id.* (citing *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)). "The ALJ here was not qualified or authorized to determine that [Frasier's] need for a hip replacement would not have affected her supposed ability to stand and walk for [four, or even two,] hours a day, upon which the ALJ's denial of benefits depended." *Id.*; *see also Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) ("Although a close question, we conclude that the ALJ erred by not soliciting an updated medical opinion interpreting Kemplen's July and September 2017 X-rays."); *Goins v Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the [ALJ] failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence." (collecting cases)); *Angela S.C. v. Saul*, No. 19 CV 50045, 2020 WL 4015334, at *6 (N.D. Ill. July 16, 2020) ("[T]he Court is persuaded that the ALJ erred by relying on outdated medical opinions and failing to submit the new evidence to another medical expert to opine on the extent of these changes and instead making that determination himself." (citation omitted)); *Snow v. Berryhill*, No. 3:18-CV-434 JD, 2019 WL 1873551, at *3 (N.D. Ind. Apr. 26, 2019) ("[T]he more recent medical records here 'changed the picture so much' that the ALJ had an obligation to submit them for expert review." (citation omitted)); *Gantner o/b/o M.J. v. Berryhill*, No. 16 C 10531, 2017 WL 6757574, at *6 (N.D. Ill. Dec. 18, 2017) (reversing the ALJ's decision where "the ALJ should have sent the post-March evidence to the state agency consultants or called upon a medical expert to testify at the hearing to ascertain [the claimant's] functional limitations"

(citations omitted)); *Salas v. Colvin,* No. 15 C 8139, 2016 WL 7209803, at *6 (N.D. Ill. Dec. 12, 2016) ("The MRI results showed increased degeneration in Salas' spine and could provide objective support and an explanation for her complaints about lower back pain. Such new and potentially decisive evidence should have been submitted to medical scrutiny.").

Furthermore, Dr. Johnson documented that Frasier was experiencing "severe left-sided hip pain" that was radiating down her thigh. (AR 3499). This evidence stands in direct contrast to earlier evaluations of record documenting just mild hip pain and limitations. (*See, e.g.*, AR 419, 3436). The ALJ apparently overlooked Dr. Johnson's more recent description of Frasier's pain when the ALJ determined: "There has been no evidence of worsening pain or reduction in range of motion [from 2021 to 2025.]" (AR 710). The 2025 X-ray and Dr. Johnson's surgical opinion clearly reflect that Frasier experienced further left hip degeneration and increased pain later in the relevant period. *See Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (remanding case where "the ALJ may have overlooked pertinent evidence regarding [the claimant's] claim of disabling pain," suggesting the claimant's pain "may have been more substantial than the ALJ believed, casting doubt on the reliability of the ALJ's final conclusions").

Therefore, the ALJ's decision will be remanded so that the ALJ can submit the 2025 left hip X-ray and Dr. Johnon's surgical opinion for an updated review by a state agency physician or other medical expert and issue a new decision.[5]

---

[5] Because a remand is warranted based on the 2025 X-ray and Dr. Johnson's surgical opinion, the Court need not discuss the other evidence Frasier contends the ALJ failed to properly consider. (*See* ECF 21 at 11-15). Nevertheless, having given Frasier's other arguments a brief review, the Court encourages the Commissioner on remand to make an effort to correct the inconsistency in the 2023/2024 state agency physicians' opinions limiting Frasier to a reduced range of light work in the narrative portion of the Disability Determination Explanation, but supplying a rating of "sedentary" as to the vocational rules (*see* ECF 21 at 12-13; AR 824-25, 833-34), which the Commissioner claims is mere harmless error (ECF 25 at 5-6). And with respect to Frasier's second argument challenging her mental RFC, the ALJ is encouraged upon remand to "orient the VE to the totality of [Frasier's] limitations," including her moderate limitations in concentration, persistence, or pace ostensibly stemming from her pain (AR 711) and ADHD (AR 702).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Frasier and against the Commissioner.

SO ORDERED.

Entered this 1st day of May 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge